IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINA RAE RICHARDSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INTERSTATE HOTELS & RESORTS, INC., and INTERSTATE MANAGEMENT COMPANY, LLC,<br><br>Defendants. | No. C 16-06772 WHA<br><br>**ORDER RE CLASS CERTIFICATION AND ORDER RE SHOW CAUSE MATTER** |

## INTRODUCTION

In this putative class action for alleged violations of wage and hour laws, plaintiff moves to certify five separate classes. The motion is **GRANTED IN PART** and **DENIED IN PART**. This order certifies three classes, appoints the named plaintiff as class representative, and appoints plaintiff's counsel of record as class counsel.

## STATEMENT

Plaintiff Dina Rae Richardson worked as a room attendant at the Sheraton Fisherman's Wharf Hotel in San Francisco ("the hotel") from April 2, 1998, to August 31, 2015. Defendants Interstate Hotels & Resorts, Inc., and Interstate Management Company, LLC (collectively, "Interstate") operated the hotel during the proposed class period from September 23, 2012, to November 29, 2016. In this action, Richardson asserts eight claims for relief against Interstate for (1) failing to provide meal periods, (2) failing to authorize and permit rest periods, (3) failing to pay minimum wages, (4) failing to pay overtime wages, (5) failing to pay wages due to

discharged and quitting employees, (6) failing to furnish accurate itemized wage statements, (7) failing to indemnify employees for necessary expenditures incurred in discharging their duties, and (8) unfair and unlawful business practices in violation of California laws.

Richardson seeks to represent approximately 350 non-exempt employees who worked at the hotel during the proposed class period. Richardson estimates that at least sixty such employees worked as room attendants from September 23, 2012, through February 2015 (Dkt. No. 41-14 ¶ 4). The instant motion articulates two theories of liability. *First*, Interstate maintained policies and practices that required room attendants at the hotel to clean a certain number of rooms per day in addition to performing other daily tasks and disciplined room attendants who failed to meet their room quotas during their scheduled shifts. Moreover, Interstate prohibited employees from taking breaks in public areas or while cleaning occupied rooms. Employees could take breaks in unoccupied rooms but could not eat or use the toilet there. These policies and practices, according to Richardson, pressured room attendants to work through their rest periods and off the clock without receiving minimum or overtime wages.

*Second*, Interstate maintained policies and practices that focused strongly on customer service and, as a result, failed to provide employees with legally-required meal periods during busy times. Moreover, Interstate rounded employees' time punches to the quarter hour for purposes of calculating wages. According to Richardson, this rounding had the cumulative effect of under-compensating employees for hours worked. Richardson admits that her fifth, sixth, and eighth claims for failing to pay wages due to discharged and quitting employees, failing to furnish accurate itemized wage statements, and unfair and unlawful business practices are derivative of her other claims (*see* Dkt. No. 53 at 18). In briefing on the instant motion, neither side mentioned Richardson's seventh claim for failing to indemnify employees for necessary expenditures incurred in discharging their duties.

Based on the foregoing theories, Richardson seeks to certify the following five classes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3):

    1.    <u>Rest Period Class</u>: All persons employed by Interstate as room attendants at the hotel during the proposed class period who worked at least one shift over 3.5 hours.

2

2. <u>Meal Period Class</u>:  All persons employed by Interstate as non-exempt employees at the hotel during the proposed class period who worked at least one shift over five hours.

3. <u>Second Meal Period Class</u>:  All persons employed by Interstate as non-exempt employees at the hotel during the proposed class period who worked at least one shift over ten hours.

4. <u>Off-the-Clock Class</u>:  All persons employed by Interstate as room attendants at the hotel during the proposed class period who worked while clocked out.

5. <u>Rounding Class</u>:  All persons employed by Interstate as non-exempt employees at the hotel during the proposed class period who had their time punches rounded.

This order follows full briefing and oral argument.

## ANALYSIS

**1.  LEGAL STANDARDS.**

Federal Rule of Civil Procedure 23(a) provides, "One or more members of a class may sue or be sued as representative parties on behalf of all members only if:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Rule 23(b) sets forth three conditions under which, if the prerequisites of Rule 23(a) are satisfied, a class action may be maintained.  Class certification is appropriate if a plaintiff meets all the prerequisites of Rule 23(a) and at least one condition of Rule 23(b).  *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956–57 (9th Cir. 2013).

**2.  RULE 23(a).**

**A.  Numerosity.**

Numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable."  F.R.C.P. 23(a)(1).  There is no dispute that the proposed classes, each of which encompasses approximately sixty to 350 members, satisfy this requirement.

**B.  Commonality.**

Commonality is satisfied if "there are questions of law or fact common to the class."  F.R.C.P. 23(a)(2).  The party seeking class certification must show that their claims depend on a

3

common contention "capable of classwide *resolution* — which means that determination of its *truth or falsity* will resolve an issue that is central to the validity of each one of the claims in one stroke." *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

### *(1)    Rest Period Class.*

Employers must authorize and permit employees to take rest periods at the rate of ten minutes rest time per four hours worked or major fraction thereof, except for employees whose total daily work time is less than 3.5 hours. CAL. LAB. CODE § 226.7; CAL. CODE REGS. tit. 8, § 11050; *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1028–29 (2012). An employer may not undermine a formal policy of providing legally-protected work breaks by pressuring or encouraging employees to skip such breaks. *E.g.*, *Brinker*, 53 Cal. 4th at 1040. During rest periods, employers must relieve employees of all duties and relinquish control over how employees spend their time. *Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257, 269 (2016).

The room attendants' collective bargaining agreement provided for an eight-hour workday with seven hours of work, two paid fifteen-minute breaks, and a thirty-minute meal period (Dkt. No. 41-8 at 41). Room attendants could be required to clean a maximum of fourteen rooms per eight-hour shift, although the number of assigned rooms could be reduced under various circumstances (*id.* at 85). The time needed to clean a room varied depending on certain factors but, at least on this record, seemed to hover around twenty to forty minutes (*see* Dkt. Nos. 53 at 8–9, 54 at 5). As stated, in addition to cleaning rooms, room attendants had to perform various other duties throughout their workday. They could be disciplined for failing to complete assigned duties during their scheduled shifts. Moreover, Richardson contends, room attendants had to take additional time away from work to travel to and from breaks because of Interstate's restrictions on where breaks could be taken.

Richardson's theory of liability for the rest period class is essentially that the foregoing policies maintained by Interstate effectively pressured room attendants to skip their rest periods to catch up on an unreasonable workload while failing to fully compensate them for said work. For example, if it usually took thirty minutes to clean a room and room attendants were usually assigned fourteen rooms per workday, then seven hours — the entire allotted work time per day — would have to be dedicated just to cleaning rooms. A scenario like this would leave no time for any other assigned duties, let alone travel time to and from break areas. Whether or not something like this was indeed the practical effect of Interstate's policies and practices, and whether or not Interstate knew as much, are questions common to the proposed class.

Interstate disputes that room attendants were disciplined for failing to clean all assigned rooms and argues that Richardson has failed to supply adequate evidence of a uniform policy or practice that denied rest periods (*see* Dkt. No. 54 at 7–9). At least on this record, these arguments go to the merits of Richardson's claims, not to their commonality. In a similar vein, Interstate claims highly individualized inquiries into the actual work schedules of room attendants will be necessary to determine whether or not Interstate actually routinely denied room attendants their rest periods (*see id.* at 9–13). This is a red herring. True, answering the question of whether or not Interstate's policies and practices had the practical effect of pressuring room attendants to skip breaks may require analysis of granular data points, but the question itself remains focused on policies and practices common to the proposed class, not on individual wage and hour violations.

### *(2)   Meal Period and Second Meal Period Classes.*

Employees who work for a period of more than five hours are entitled to a meal period of at least thirty minutes. If a work period of not more than six hours will complete the day's work, however, the meal period may be waived by mutual consent of the employer and employee. Employers who fail to provide the required meal periods must pay one additional hour of regular compensation for each workday that the meal period is not provided. CAL. LAB. CODE §§ 226.7, 512(a); CAL. CODE REGS. tit. 8, § 11050.

5

Interstate contends Richardson does not have standing to assert meal period claims because she testified in deposition that she always consistently took full thirty-minute meal breaks (*see* Dkt. No. 55-1 at 79:24–80:11, 81:7–16), and never became eligible for a second meal break because she never recorded more than eight hours per day during the proposed class period (*see* Dkt. No. 56-1 at 7). *See, e.g.*, *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015) (a class representative must possess the same interest and have suffered the same injury as the class members) (citing *Wal-Mart*, 564 U.S. at 348–49). Interstate raises this lack of standing as a problem of commonality, but it also goes to both typicality and adequacy. *See, e.g.*, *Wal-Mart*, 564 U.S. at 349 n.5 (commonality and typicality tend to merge in determining whether the interests of absent class members will be fairly and adequately protected); *Backus v. ConAgra Foods, Inc.*, No. C 16-00454 WHA, 2016 WL 7406505, at *5 (N.D. Cal. Dec. 22, 2016) (unique defenses can go to either typicality or adequacy).

Richardson's only reply is that she "was denied lawful meal breaks because her managers interrupted her meal breaks" (Dkt. No. 77 at 11). This fails to respond to Interstate's point that she never worked enough hours in a day to be eligible for a second meal period and is thus ineligible to represent the second meal period class. Even as to the meal period class, however, Richardson's response is inadequate.

Richardson relies on a portion of her own deposition wherein she described supervisors telling her, during lunch, about the work she would have to do after lunch. Read in context, however, the cited passage does not indicate that any supervisor "interrupted" Richardson's lunch for work. In response to the question, "What did you discuss with your supervisors when you were having your lunch?" Richardson answered, "The guests, personal life, other employees" — not work interruptions but conversation topics typical of individuals having lunch together. In response to the next question, "And when did supervisors tell you what you were going to do in the afternoon after your meal break?" Richardson described the general process by which supervisors would figure out her assignments. One example she offered in that description was that a supervisor might tell her something like, "Well, when you finish lunch, you have to go and do this room." This testimony offers no reasonable basis for inferring that

6

1  Richardson's supervisors ever deprived her of meal periods through interruptions for work, let
2  alone that Interstate had some unlawful policy or practice to deny employees meal periods
3  (*see* Dkt. No. 78-1 at 236:1–24). It does not show that Richardson could adequately represent
4  the claims of the meal period classes.

5  The foregoing would be sufficient grounds to deny certification for the meal period and
6  second meal period classes. It bears mentioning, however, that certification should also be
7  denied for those classes because Richardson falls well short of articulating any policy or practice
8  by which Interstate denied the class members of legally-required meal periods. Her thesis boils
9  down to the contention that employees were often unable to take meal periods when the hotel
10 was busy because, in the business of hospitality, there was a strong focus on customer service
11 that ostensibly created tension with employees' ability to stop work for meals (*see, e.g.*, Dkt. No.
12 53 at 12, 77 at 8–9). In other words, under Richardson's theory, any employer in the hospitality
13 industry with high standards for excellent customer service is liable for denying meal periods
14 because the demands of customer service will pressure employees to skip meals. This theory
15 proves far too much — indeed, would capture virtually every employer in any customer-service
16 industry — and defies common sense. While the class certification inquiry generally does not
17 involve probing into the merits of the claims, it would be absurd to certify a class on such a
18 facially untenable theory of liability.

### *(3)    Off-the-Clock Class.*

20 Employers must compensate employees for time worked and overtime. *See* CAL. LAB.
21 CODE §§ 510, 1194; CAL. CODE REGS. tit. 8, § 11050. Under California law, a plaintiff may
22 establish liability for an off-the-clock claim by proving that (1) they performed work for which
23 they did not receive compensation, and (2) the employer knew or should have known as much,
24 but (3) the employer stood idly by. *E.g.*, *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th
25 Cir. 2014). Richardson's theory of liability for the off-the-clock class piggybacks off her
26 theories for the rest period and rounding classes. As a result of the same unlawful policies and
27 practices underlying those claims, she contends, Interstate also did not fully compensate

7

1 employees for hours worked, including overtime.  The off-the-clock class satisfies the
2 commonality requirement for the same reasons that the rest period and rounding classes do.

### (4) Rounding Class.

Employers can engage in employee time-rounding as long as the rounding policy is neutral, both facially and as applied, such that employees are fully compensated over a period of time.  *See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 901–03 (2012).  Richardson's theory of liability for the rounding class is essentially that, despite being facially neutral, Interstate's rounding policy actually had the cumulative effect of under-compensating employees over time.  Whether or not the record supports Richardson's theory is also a question common to the class.  According to Richardson and her expert witness, Richard Drogin, the alleged effect can be gleaned by sampling data from Interstate's time and payroll records (*see* Dkt. No. 41-15 ¶¶ 9–10).  Interstate criticizes Drogin's analysis and insists that its rounding policy is sufficiently neutral in application to avoid liability, but these arguments go to the merits of Richardson's claims, not to their commonality.

### C. Typicality.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  F.R.C.P. 23(a)(3).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation and quotations omitted).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.

As explained, this order concludes Richardson does not have claims typical of the meal period classes.  As to the rest period, off-the-clock, and rounding classes, however, Richardson's claims are sufficiently coextensive with those of absent class members to satisfy typicality.  Interstate's main critique on typicality is that Richardson suffered from knee pain, which further slowed her ability to finish cleaning assigned rooms and take rest periods on time (*see* Dkt. No.

8

54 at 3, 24).  As Richardson argues, however, the point is not whether or not other factors specific to her exacerbated the injury allegedly caused by Interstate's policies and practices. Rather, the point is whether or not those policies and practices indeed functioned as Richardson alleges, and there is no dispute that Richardson, like absent class members, would have been subject to the effects of said policies and practices.

### D.  Adequate Representation.

A proposed class representative is adequate if they "will fairly and adequately protect the interests of the class."  F.R.C.P. 23(a)(4).  Our court of appeals has explained that a representative meets this standard if they (1) have no conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class.  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  The parties do not dispute that Richardson and her counsel meet this requirement.  As explained, however, this order concludes Richardson is not an adequate representative for any meal period class.

### 3.  RULE 23(b).

Richardson contends she satisfies the third condition of Rule 23(b), which provides:

> A class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

As to the rest period, off-the-clock, and rounding classes, this order finds that the common questions described above predominate over any questions affecting only individual members.  The record does not show — and Interstate does not contend — that absent class members would be interested in individually controlling the prosecution of these claims, that any

9

other litigation concerning this controversy has already begun, or that concentrating litigation of these claims in this forum would be undesirable. Nor is there any reason to believe these claims would be unduly difficult to manage as a class action. To the contrary, the class claims would involve specific groups of employees from just one hotel in this district and would facilitate the efficient prosecution of their wage and hour claims.

Throughout its opposition, Interstate makes much of the point that facts unique to individual employees may influence whether and to what extent the unlawful policies and practices alleged by Richardson actually affected said employees. For example, Interstate criticizes the manageability of this action by pointing out that it has the right to determine liability as to each individual class member (*see, e.g.*, Dkt. No. 54 at 24–25). These arguments ignore the important distinction that, as Interstate's own authorities recognized (*see id.* at 18), while individual employees establish liability by proving actual denial of rest periods or time worked without legally-required compensation, a class may establish liability by proving a uniform policy or practice by the employer that has the effect on the group of making such workplace violations likely. The need for class members to individually establish eligibility and damages does not mean that individual fact questions predominate. *See, e.g.*, *Sotelo v. MediaNews Grp., Inc.*, 207 Cal. App. 4th 639, 652, 654 (2012).

### 4. SHOW CAUSE MATTER RE REQUEST TO STRIKE DECLARATIONS.

In the reply brief, Richardson seeks to strike the declarations of fourteen hotel employees and putative class members submitted in support of Interstate's opposition on the basis that Interstate's counsel improperly represented the declarants during their depositions, thereby creating a conflict of interest and tainting their declarations (Dkt. No. 77 at 12–15). This issue was discussed at length at the class certification motion hearing, after which the Court set a separate evidentiary hearing to investigate the matter further (*see* Dkt. No. 82 at 34:1–3). Richardson also filed a motion to appoint separate counsel for the three declarants scheduled to testify at the evidentiary hearing (Dkt. No. 84). Said hearing ultimately proceeded without appointment of separate counsel, though the Court reserved the possibility that separate counsel may (or may not) be appointed at a later time (*see* Dkt. No. 90 at 4:2–12, 82:24–83:7).

10

After the evidentiary hearing, during which the Court heard live testimony from hotel employees and declarants Ellen Liao, Jessica Lin, and Lisa Wong, an order required defense counsel to show cause why they should not be disqualified entirely from this action, the problem being that defense counsel had apparently represented adverse interests on opposite sides of this case (and had confidential communications with both). Both sides had an opportunity to brief the issue (Dkt. Nos. 92, 98–99), followed by a show cause hearing at which both sides had a further opportunity to make their respective arguments.

Given the troubling circumstances under which defense counsel obtained supporting declarations from hotel employees for the purpose of opposing class certification, this order agrees with Richardson that said declarations should be stricken. At the outset of this case, hotel management directed fourteen employees — putative class members — to sit for interviews during work hours by defense counsel from the law firm of Morgan, Lewis & Bockius LLP. For each interview, defense counsel provided the employee with a form disclosure explaining, among other things, that the interviewing attorney represented Interstate, not the employee; that information provided in the interview might be used to defend this action; and that the employee "may, but [has] no obligation to, speak with or otherwise cooperate with the Plaintiff's attorneys." The form disclosure did not include a waiver of or consent to any conflict of interest (*see* Dkt. Nos. 95, 95-1–95-3). As subsequent testimony revealed, however, at least some of the employees required interpreters, did not fully understand the disclosures, did not fully understand what a putative class action was or how it might affect them (*e.g.*, that they might recover money if they became part of a prevailing class), did not fully understand how their interviews might ultimately affect this litigation, and did not feel free to decline the interviews or to speak with plaintiff's counsel instead (*see, e.g.*, Dkt. Nos. 90 at 15:12–14; 37:9–11, 57:16–58:1; 95 ¶ 3; 98-10 at 42:10–12; 98-11 at 26:10–15; 98-17 at 48:3–9). To highlight just one nonexhaustive example, live testimony at the evidentiary hearing strongly indicated that at least some of the employees did not fully understand the meaning of legal concepts like a class action or a conflict of interest (or what it meant to waive one) and had trouble following attorney questions and explanations in general (*see, e.g.*, Dkt. No. 90 at 17:14–25, 22:21–23:8, 36:13–19,

1  37:22–38:11). Put simply, the circumstances surrounding the interviews were not nearly as
2  reliable as the form disclosures drafted by counsel would suggest.

3  After the interviews, defense counsel presented each hotel employee with a declaration
4  drawn from their interview. The declarations were also prepared by attorneys and, put most
5  generously, phrased to advance only points favoring Interstate while omitting points favoring the
6  putative classes. No facts favoring Richardson and the putative classes, to repeat, made their
7  way into the declarations. The employees signed the declarations, which were subsequently
8  used to oppose class certification. Had plaintiff's counsel conducted the interviews, the Court
9  expects the declarations would have been more balanced in their factual assertions.

10  The foregoing unilateral and one-sided procedure followed by defense counsel bothered
11  the Court both because it undercuts the reliability of the resulting declarations and because
12  defense counsel knew they were dealing with employees putatively adverse to their employer
13  and its counsel — employees that Richardson and her counsel sought to represent. At the pre-
14  certification stage, this may not have violated the California Rules of Professional Conduct but at
15  least under these circumstances, the Court would have preferred that potential class members be
16  interviewed or deposed with both sides present.

17  Defense counsel plainly violated California Rule of Professional Conduct 3-310(C),
18  however, when they then proceeded to represent the declarants at their depositions without
19  obtaining informed written consent beforehand. Defense counsel's sole argument to the contrary
20  is that no conflict of interest existed, and Rule 3-310(C) did not apply, because "[t]he
21  declarations signed by the . . . employees transformed their status from putative class members
22  with a potential conflict with Interstate . . . to individuals who could have no conflict with
23  Interstate because of their confirmation they had suffered no injury in fact" (*see* Dkt. Nos. 92 at
24  11; 99 at 4). The parties debate whether or not the declarations signed by hotel employees
25  actually sufficed to establish their removal from the putative classes (no, only an opt-out after
26  proper class notice can do that), but this debate misses a more fundamental point. Defense
27  counsel's argument rests on the erroneous premise that counsel can simply pave their own way
28  out of what would otherwise be an obvious conflict of interest by manufacturing unreliable

12

1  declarations from parties on one side of the conflict, in service to the party on the other side of

2  the conflict, and then pointing to those same declarations as proof positive that no conflict

3  existed. The employee declarations in question — and the troubling circumstances of their

4  origin — lack both the substance and reliability necessary to carry this weight. With this

5  argument rejected, it becomes clear that defense counsel represented more than one client with at

6  least potentially conflicting interests in this litigation, without obtaining informed written

7  consent beforehand and in violation of Rule 3-310(C).

8  Although defense counsel could be disqualified entirely from the case as a result, this

9  order will allow the law firm of Morgan, Lewis & Bockius to continue its representation of

10  Interstate only on the conditions stated herein.

11  Nothing procured by Morgan, Lewis & Bockius from the hotel employees, including

12  their declarations, may be used herein by defense counsel against their former clients. As a

13  result, Interstate may not rely on those declarations or depositions for any purpose (other than as

14  may become necessary under the rule of completeness for passages relied upon by the opposing

15  side). Nor will defense counsel be allowed to cross-examine any hotel employees they

16  represented if those employees are called to testify at trial or on summary judgment. (Some

17  other firm without taint will have to do so.) Possibly, the jury will be informed as to the facts

18  underlying defense counsel's representation of hotel employees.

19  For the foregoing reasons, Richardson's request to strike the declarations appended to

20  Interstate's opposition is **GRANTED**. Those declarations are hereby **STRICKEN**. This ruling does

21  not alter the outcome of the order on class certification.

## CONCLUSION

To the foregoing extent, plaintiff's motion for class certification is **GRANTED IN PART** and **DENIED IN PART**. The following classes are **CERTIFIED**:

> Rest Period Class: All persons employed by Interstate as room attendants at the Sheraton Fisherman's Wharf in San Francisco, California, at any time from September 23, 2012, through November 29, 2016, who worked at least one shift over 3.5 hours.
>
> Off-the-Clock Class: All persons employed by Interstate as room attendants at the Sheraton Fisherman's Wharf in San Francisco,

13

California, at any time from September 23, 2012, through November 29, 2016, who worked while clocked out.

<u>Rounding Class</u>:  All persons employed by Interstate as non-exempt employees at the Sheraton Fisherman's Wharf in San Francisco, California, at any time from September 23, 2012, through November 29, 2016, who had their time punches rounded.

These class definitions shall apply for all purposes, including settlement.  Plaintiff Dina Rae Richardson is hereby **APPOINTED** as class representative.  Plaintiff's counsel from the Matern Law Group, P.C., are hereby **APPOINTED** as class counsel.

By **MARCH 19 AT NOON**, the parties shall jointly submit a proposal for class notification that includes all languages spoken by class members, with a plan to distribute notice — including by first-class mail — by **APRIL 9**.  In crafting their joint proposal, counsel shall please keep in mind the undersigned judge's guidelines for notice to class members in the "Notice Regarding Factors to be Evaluated for Any Proposed Class Settlement" (Dkt. No. 12).

**IT IS SO ORDERED.**

Dated:  March 12, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE