**MATERN LAW GROUP, PC**
MATTHEW J. MATERN (SBN 159798)
mmatern@maternlawgroup.com
LAUNA ADOLPH (SBN 227743)
ladolph@maternlawgroup.com
KAYVON SABOURIAN (SBN 310863)
ksabourian@maternlawgroup.com
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, CA 90266
Tel: (310) 531-1900
Facsimile: (310) 531-1901

Attorneys for Plaintiff
DINA RAE RICHARDSON, individually
and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINA RAE RICHARDSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>INTERSTATE HOTELS & RESORTS, INC., a Delaware corporation; INTERSTATE MANAGEMENT COMPANY, LLC, a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 16-cv-06772-WHA<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Filed concurrently with Declarations of Matthew J. Matern, Jason S. Mills, and Tarus Dancy; [Proposed] Order Granting Final Approval of Class Action Settlement; and [Proposed] Judgment]<br><br>Date:        February 7, 2019<br>Time:       10:30 a.m.<br>Courtroom:  12 |

**TABLE OF CONTENTS**

**PAGE(S)**

I. INTRODUCTION ...................................................................................................... 1

II. THE SETTLEMENT .................................................................................................. 2

   A. The Classes ........................................................................................................ 2

   B. Settlement Terms ............................................................................................... 3

   C. The Release ....................................................................................................... 5

III. CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH RULE 23 AND THE REQUIREMENTS OF DUE PROCESS ...................... 5

IV. THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ............... 7

   A. The Proposed Settlement Is Presumed to Be Fair ............................................ 7

   B. Relevant Criteria Support Final Approval of the Proposed Settlement ........... 8

      1. The Settlement Offers Substantial Benefits When Balanced with the Strength of Plaintiff's Case ...................................................................... 9

      2. The Risk, Expense, Complexity, and Duration of Further Litigation ....... 11

      3. The Risk of Maintaining Class Action Status through Trial ..................... 11

      4. The Amount Offered in Settlement ............................................................ 12

      5. Extent of Discovery Completed and the Stage of the Proceedings ........... 13

      6. The Experience and Views of Class Counsel ............................................ 14

      7. The Presence of a Governmental Participant ........................................... 14

      8. Class Members' Reaction to the Proposed Settlement ............................. 14

      9. Fair and Honest Negotiations .................................................................... 15

V. CONCLUSION ........................................................................................................... 15

MATERN LAW GROUP, PC
1230 ROSECRANS AVENUE, STE 200
MANHATTAN BEACH, CA 90266

# **TABLE OF AUTHORITIES**

Cases                                                                                                          Page(s)

*Aarons v. BMW of North America, LLC*,
   2014 WL 4090564 (C.D. Cal. 2014). ........................................................................... 14

*Amaral v. Cintas Corp. No.2*
   (2008) 163 Cal.App.4th 1157 ........................................................................................ 10

*Burns v. Elrod*,
   757 F.2d 151 (7th Cir. 1985) .......................................................................................... 6

*Fulford v. Logitech, Inc.*,
   2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) .............................................. 11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)). ...................................................................................... 7

*Harris v. Vector Mktg. Corp.*,
   2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ................................................................ 7

*Portal Software Secs. Litig.*,
   2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ............................................................. 11

*Linney v. Cellular Alaska Partnership*,
   151 F.3d 1234 (9th Cir. 1998) ...................................................................................... 12

*Maldonado v. Epsilon Plastics, Inc.*,
   22 Cal. App. 5th 1308 (2018) ....................................................................................... 10

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) ........................................................................................ 14

*Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................. 15

*Officers for Justice v. Civil Serv. Comm'n of S.F.*,
   688 F.2d 615 (9th Cir. 1982) ................................................................................. 7,11,12

*Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................................................ 8,14

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ..................................................................................... 7,8,15

*Staton v. Boeing Co.*,
   327 F. 938 (9th Cir. 2003) ........................................................................................... 7,9

*Stewart v. San Luis Ambulance*,
   Cal. Supreme Court Case No. S246255 ....................................................................... 10

*Synocor ERISA Litigation*,
   516 F.3d 1095 (9th Cir. 2008) ........................................................................................ 7

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (C.D. Cal. 2010) .................................................................................... 9

MATERN LAW GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN BEACH, CA
90266

i

PLAINTIFF'S MOTION FOR FINAL APPROVAL
CASE NO. 16-CV-06772-WHA

*Willner v. Manpower Inc.*
    35 F.Supp.3d 1116, 1131. (N.D. Cal. 2014) .................................................................. 10

*Wireless Facilities, Inc. Sec. Litig. II*,
    253 F.R.D. 607, 610 (S.D. Cal. 2008) ............................................................................ 7

*Young v. Polo Retail*, *LLC*,
    2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ........................................................... 11,13

Statutes

28 U.S.C. § 1715 .................................................................................................................... 6

Business & Professions Code § 17200 .................................................................................. 5

Labor Code §§ 201 ................................................................................................................ 5

Labor Code §§ 202 ................................................................................................................ 5

Lab. Code §§ 203 ............................................................................................................. 5, 10

Labor Code § 226 .............................................................................................................. 5,10

Labor Code § 226.7 ............................................................................................................... 5

Labor Code §§ 510 ................................................................................................................ 5

Labor Code §§ 1194 .............................................................................................................. 5

Labor Code §§1197 ............................................................................................................... 5

Labor Code §§ 1198 .............................................................................................................. 5

Rules

Fed. R. Civ. P. 23 ............................................................................................................... 6,7

Regulations

8 Cal. Code Reg. § 11050 ..................................................................................................... 5

MATERN LAW GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN BEACH, CA
90266

ii   PLAINTIFF'S MOTION FOR FINAL APPROVAL
CASE NO. 16-CV-06772-WHA

**NOTICE OF MOTION**

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 7, 2019, at 10:30 a.m., in Courtroom 12 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, plaintiff Dina Rae Richardson ("Plaintiff") will and hereby does move the Court for an order granting final approval of class action settlement.

This motion is made pursuant to Federal Rules of Civil Procedure, Rule 23, and is based on this Notice of Motion, the below Memorandum of Points and Authorities, the Declarations of Matthew J. Matern, Jason S. Mills, and Tarus Dancy and all exhibits thereto, including the Stipulation of Class Action Settlement ("Stipulation"), all documents and records on file in this matter, and such additional arguments, authorities, evidence, and other matters as may be presented by the Parties hereafter.

**RELIEF SOUGHT**

Plaintiff respectfully requests the Court issue an order:

1. Granting final approval of the terms of the proposed class action settlement described in the Stipulation as fair, reasonable, and adequate to all Class Members;

2. Finding that the Notice of Settlement distributed to the Class Members pursuant to the Court's order granting preliminary approval constituted the best notice practicable under the circumstances;

3. Directing that compensation to all Participating Class Members be affected pursuant to the terms of the Stipulation; and

4. Entering final judgment in the action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On September 17, 2018, this Court granted preliminary approval of the proposed Settlement between Plaintiff and defendants Interstate Hotels & Resorts, Inc. ("IHR") and Interstate Management Company, LLC ("IMC") (collectively, "Defendants"). Dkt. 127. Plaintiff now seeks an order granting final approval of the proposed Settlement.

If finally approved, the Settlement will create an all-inclusive, non-reversionary settlement fund in the amount of $800,000.00. The proposed Settlement will dispose of this Action in its entirety as to the three classes previously certified by the Court, which are defined as follows:

1. <u>Rest Period Class</u>: all persons employed by Defendants as room attendants at the Sheraton Fisherman's Wharf in San Francisco, California, at any time during the Class Period, who worked at least one shift over 3.5 hours;

2. <u>Off-the-Clock Class</u>: all persons employed by Defendants as room attendants at the Sheraton's Fisherman's Wharf in San Francisco, California at any time during the Class Period; and

3. <u>Rounding Class</u>: all persons employed by Defendants as non-exempt employees at the Sheraton Fisherman's Wharf in San Francisco, California, at any time during the Class Period, who had their time punches rounded.

The proposed Settlement is fair, adequate, and reasonable. The Settlement provides substantial benefits to the Class Members when balanced with the strength of Plaintiff's case and the risks and expense of further litigation. In addition, the reaction of the Class Members to the Settlement has been overwhelmingly positive, as, to date, there are no objections and no requests for exclusion. Additionally, the Settlement was reached through mediated arms-length negotiations, sufficient investigation and discovery allowed Class Counsel to act intelligently, and Class Counsel supports the Settlement as being in the best interests of the Class Members. Accordingly, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Final Approval of Class Action Settlement.[1]

## II.   THE SETTLEMENT

### A.   <u>The Classes</u>

The proposed settlement encompasses the three classes previously certified by the Court, which are defined as follows:

---

[1] Pursuant to the Northern District of California's Procedural Guidance for Class Action Settlements, Plaintiff refers the Court to the Statement of Facts set forth in Plaintiff's Motion for Attorneys' Fees and Costs and a Class Representative Service Award. Dkt. 128, pp. 2-5.

1. <u>Rest Period Class</u>: All persons employed by Defendants as room attendants at the Sheraton Fisherman's Wharf in San Francisco, California, at any time during the Class Period, who worked at least one shift over 3.5 hours;

2. <u>Off-the-Clock Class</u>: All persons employed by Defendants as room attendants at the Sheraton's Fisherman's Wharf in San Francisco, California at any time during the Class Period; and

3. <u>Rounding Class</u>: All persons employed by Defendants as non-exempt employees at the Sheraton Fisherman's Wharf in San Francisco, California, at any time during the Class Period, who had their time punches rounded.

Dkt. 106; Stipulation ¶ 6.

**B.     Settlement Terms**

Under the proposed Settlement, the claims of all Class Members shall be settled for the Maximum Settlement Amount of Eight Hundred Thousand Dollars ($800,000.00), which is inclusive of all Individual Settlement Awards to Class Members, the Class Counsel Award, the Class Representative Service Award, and the Employer's Share of Payroll Taxes. Stipulation ¶ 19. The Maximum Settlement Amount shall be allocated as follows:

1. <u>Individual Settlement Awards</u>. The Net Settlement Amount, which equals the Maximum Settlement Amount less the Class Counsel Award, the Class Representative Service Award, and the Employer's Share of Payroll Taxes, shall be distributed to Class Members. Stipulation ¶¶ 20, 47(a).[2] Each Class Member shall receive his/her respective share of the Net Settlement Amount based on his/her Compensable Workweeks. Stipulation ¶ 47(a)(i).

   a. The Net Settlement Amount shall be allocated as follows: 41.5% to the Room Attendant Class Members and 58.5% to the Non-Room Attendant Class Members. Stipulation ¶ 47(a)(i)(1).[3]

---

[2] Class Members are not required to submit a claim in order to receive a share of the Net Settlement Amount, and no portion of the Maximum Settlement Amount shall revert to Defendants or result in an unpaid residue. Stipulation ¶ 47.

[3] The allocation between the Room Attendant Class Members and Non-Room Attendant Class Members was calculated based on the maximum potential damages attributable to each group of employees. Matern Decl. ¶ 23.

        b.        The Settlement Administrator shall divide the portion of the Net Settlement Amount allocated to the Room Attendant Class Members by the number of Compensable Workweeks worked by all Room Attendant Class Members resulting in a value for each week worked by the Room Attendant Class Members during the Class Period ("Room Attendant Workweek Value"). The Settlement Administrator shall then multiply the number of Compensable Workweeks for each Room Attendant Class Member by the Room Attendant Workweek Value. Stipulation ¶ 47(a)(i)(2).

        c.        The Settlement Administrator shall divide the portion of the Net Settlement Amount allocated to the Non-Room Attendant Class Members by the number of Compensable Workweeks worked by all Non-Room Attendant Class Members resulting in a value for each week worked by the Non-Room Attendant Class Members during the Class Period ("Non-Room Attendant Workweek Value"). The Settlement Administrator shall then multiply the number of Compensable Workweeks for each Non-Room Attendant Class Member by the Non-Room Attendant Workweek Value. Stipulation ¶ 47(a)(i)(3).[4]

    2.    <u>Class Representative Service Award</u>. Subject to Court approval, Plaintiff shall be paid a Class Representative Service Award not to exceed Five Thousand Dollars ($5,000.00) for her time and effort in bringing and presenting the Action and for releasing her Released Claims. Stipulation ¶ 47(b).

    3.    <u>Class Counsel Award</u>. Subject to Court approval, Class Counsel shall be entitled to receive reasonable attorneys' fees in an amount to be determined by the Court, and an award of reasonable costs associated with Class Counsel's prosecution of the Action. Stipulation ¶ 47(c).[5]

---

[4] If an Individual Settlement Payment check remains uncashed after One Hundred Eighty (180) days from issuance, the Settlement Administrator shall pay over the amount represented by the check, without the need to include interest, to the California Department of Industrial Relations Unclaimed Wages Fund, with the identity of the Participating Class Member to whom the funds belong. Stipulation ¶ 48(b)(i).

[5] Class Counsel seeks attorneys' fees in the amount of $266,666.67, representing one-third of the Maximum Settlement Amount, and costs in the amount of $127,666.44. Dkt. 128.

4. <u>Employer's Share of Payroll Taxes</u>. The Employer's Share of Payroll Taxes, including, but not limited to FICA and FUTA, shall be paid from the Maximum Settlement Amount. Stipulation ¶¶ 13, 19.[6]

5. <u>Settlement Administration Costs</u>. The Settlement Administration Costs, in the amount of $13,500.00, shall be paid by Defendants in addition to the Maximum Settlement Amount. Stipulation ¶ 47(e); Declaration of Tarus Dancy ("Dancy Decl.") ¶ 19.

### C.  **The Release**

Upon the Effective Date, Plaintiff and other Class Members shall release and discharge the Released Parties from "all claims, demands, rights, liabilities and/or causes which were certified for class treatment, including claims for (1) failure to pay minimum wages (Labor Code §§ 1194, 1197; 8 Cal. Code Reg. § 11050(4)); (2) failure to pay overtime wages (Labor Code §§ 510, 1194, 1198; 8 Cal. Code Reg. § 11050(3)); (3) failure to pay all wages due to discharged and quitting employees (Labor Code §§ 201, 202, 203); (4) failure to furnish accurate itemized wage statements (Labor Code § 226); (5) unfair and unlawful business practices (Business & Professions Code § 17200, et seq.); and, for Room Attendant Class Members only, (6) failure to provide rest periods (Labor Code § 226.7; 8 Cal. Code Reg. § 11050(12)), and which arose during the Class Period." Stipulation ¶ 28.

The "Released Parties" are (i) Defendants Interstate Hotels & Resorts, Inc. and Interstate Hotels, LLC, (ii) their past, present and future subsidiaries, parents, affiliated and related companies, divisions, successors, predecessors or assigns, and (iii) their past, present, and future officers, directors, shareholders, partners, agents, insurers, employee, advisors, accountants, representatives, trustees, heirs, executors, administrators, predecessors, successors or assigns of any of the foregoing. Stipulation ¶ 29.

### III.  **CLASS NOTICE HAS BEEN EFFECTUATED AND COMPORTS WITH RULE 23 AND THE REQUIREMENTS OF DUE PROCESS**

---

[6] Individual Settlement Awards shall be allocated one-third as wages and two-thirds as non-wage penalties and interest. Stipulation ¶ 47(a)(iii).

Before a court may grant final approval of a proposed class action settlement, adequate notice of the settlement must be provided to the class members. Fed. R. Civ. P. 23(e)(1). Class members should be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The "best notice practicable" does not require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process, but it often includes (as in this case) direct notice to class members who can be identified by regular mail. *See, e.g.*, *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985).

The notice plan, as approved by the Court, has been implemented by the Settlement Administrator.[7] On October 10, 2018, the Settlement Administrator received from Defendants a list containing the Class Members' names, last known mailing addresses, job title, email address, and total weeks worked during the Class Period (the "Class Information"). Dancy Decl. ¶ 5. The Class Information contained information for 350 Class Members, including 74 Room Attendant Class Members and 276 Non-Room Attendant Class Members. *Id.* The Settlement Administrator updated the Class Information using the National Change of Address search. *Id.* at ¶ 6. On October 24, 2018, the Notice Packets were mailed to the Class Members via U.S. First Class Mail. *Id.* at ¶ 7. Five Notice Packets were returned as undeliverable. *Id.* at ¶ 8. The Settlement Administrator performed a skip trace on all returned mail with no forwarding address in an effort to locate a better address using Accurint. *Id.* As a result of either skip trace or a request from the Class Member, all five Notice Packets were re-mailed to the Class Members. *Id.* at ¶ 9. There are no undeliverable Notice Packets. *Id.*

To date, there are no requests for exclusion and no objections to the Settlement. Dancy Decl. ¶¶ 11, 13; Matern Decl. ¶ 18.

In sum, the notice procedures undertaken by the Settlement Administrator constitute the best notice practicable under the circumstances, and fully comply with Rule 23 and the requirements of due process.

---

[7] Additionally, notice has been given to the appropriate state and federal officials in accordance with 28 U.S.C. § 1715. Declaration of Jason S. Mills ¶¶ 2-5.

## IV. THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

Pursuant to Federal Rules of Civil Procedure, Rule 23(e), "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. Proc. 23(e). In order to approve a final settlement in a class action, the district court must find that the proposed settlement is fundamentally fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(l)(c); *Staton v. Boeing Co.*, 327 F. 938, 952 (9th Cir. 2003). Although the court possesses "broad discretion" in issuing a final determination that a proposed class action settlement is fair, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Courts in the Ninth Circuit have "long deferred to the private consensual decision of the parties." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 101l, 1027 (9th Cir. 1998)). In the end, "[s]ettlement is the offspring of compromise; the question [the court] addresses is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. In considering whether to grant final approval of a class action settlement, the Ninth Circuit has noted that "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Synocor ERISA Litigation*, 516 F.3d 1095, 1011 (9th Cir. 2008).

### A. The Proposed Settlement Is Presumed to Be Fair

The Court should begin its analysis with a presumption that the proposed Settlement is fair and should be approved. "Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (citations omitted); *see Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, *8 (N.D. Cal. Apr. 29, 2011) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."). Courts find that

"parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Pacific Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995).

Here, the parties negotiated the proposed Settlement at arm's length with the assistance of United States Magistrate Judge Donna M. Ryu. Matern Decl. ¶ 15. Nearly two years of extensive factual investigation and discovery allowed Class Counsel – who has significant experience in wage and hour class action litigation – to assess the strengths and weaknesses of the claims against Defendants and the benefits of the proposed Settlement. *See* Matern Decl. ¶¶ 7-14. During the course of the litigation, Class Counsel (1) reviewed over 2,000 pages of documents produced by Defendants, (2) took the depositions of Defendants' 30(b)(6) witness, two corporate employees, one supervisor, Defendants' expert, and 15 Class Members who provided declarations in support of Defendants' opposition to the motion for class certification, (3) interviewed more than 30 Class Members, (4) defended the depositions of Plaintiff, Plaintiff's expert, and five Class Members who submitted declarations in support of the motion for class certification, and (5) prepared a damages model based on expert analysis of the time and payroll data and information obtained from Defendants and Class Members. Matern Decl. ¶¶ 7-14. Plaintiff and Class Counsel therefore had adequate information to gauge the value of the Class Members' claims and assess whether the proposed Settlement amount is fair, adequate, and reasonable. As further set forth below, Class Counsel supports the Settlement because it achieves an outstanding result for the Class Members, particularly in light of the risks of continued litigation.

Accordingly, the proposed Settlement is entitled to a presumption of fairness.

### B. Relevant Criteria Support Final Approval of the Proposed Settlement

In deciding whether to grant final approval of a class action settlement, courts consider several factors, including: (l) the strength of the plaintiff's case; (2) the risk, complexity, and duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez*, 563 F.3d at 963; *see also*

*Staton*, 327 F.3d at 959. The list of factors is not exhaustive and should be tailored to each case. *Staton*, 327 F.3d at 959. Applied to this case, the relevant criteria support final approval of the proposed Settlement.

### 1. The Settlement Offers Substantial Benefits When Balanced with the Strength of Plaintiff's Case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (C.D. Cal. 2010) (internal quotation mark omitted). The proposed Settlement in the amount of $800,000.00 is reasonable when balanced against the strengths and weaknesses of Plaintiff's claims.

The maximum potential recovery, including unpaid wages, interest and penalties, for the certified claims is $4,158,169.83. Matern Decl. ¶ 19. Thus, the Maximum Settlement Amount represents nearly 20% of that amount. *Id.* The amount of unpaid wages exclusive of interest and penalties is $1,112,194.11, meaning the Settlement represents almost 72% of that amount. *Id.*

The Settlement properly takes into account the risks associated with further litigation. While Plaintiff contends that room attendants were pressured to forego their rest breaks and work off-the-clock due to the requirements imposed by Defendants, Defendants dispute this contention. Matern Decl. ¶ 25. Under the Collective Bargaining Agreement, room attendants typically were assigned 14 rooms. *Id.* However, under some circumstances, room attendants could drop rooms. *Id.* Additionally, Defendants contend that, even if room attendants were prevented from taking rest breaks, actual denied breaks were sporadic and minimal. *Id.* Defendants similarly contend that any off-the-clock work was minimal and that there is no evidence that management knew that room attendants were working off-the-clock. *Id.*

Furthermore, given the lack of records for rest breaks and off-the-clock work, establishing damages would be difficult. Matern Decl. ¶ 25. As the Court noted in granting class certification, "answering the question of whether or not Interstate's policies and practices had the practical effect of pressuring room attendants to skip breaks may require analysis of granular data points." Dkt. 106, p. 5. While not sufficient to defeat class certification, the "analysis of granular

data points" would be a difficult, expensive and time-consuming process. Matern Decl. ¶ 25. While Plaintiff maintains that both liability and the amounts of premium wages due for missed rest periods may be determined using representative sampling, any proposed methodology would be subject to attack by Defendants in ways that could limit any recovery. *Id*.

The Rounding Class would be vulnerable to similar challenges. While Plaintiff contends that Class Members were systematically undercompensated due to Defendants' rounding policy, Defendants contend their rounding policy is neutral on its face and in practice and thus complies with applicable law. Matern Decl. ¶ 26. Furthermore, the amount of unpaid compensation due to rounding is relatively small, as Plaintiff's expert determined that, on average, employees were not compensated for 0.79 minutes per shift. Dkt. 78-27, p. 4.

Plaintiffs' claims for penalties under Labor Code sections 226 and 203 are derivative of the rest break, minimum wage, and overtime claims. Therefore, if relief was denied on the underlying claims, Plaintiff would recover no penalties under Labor Code section 226 and 203. To prevail on these claims, Plaintiff also would have to establish that Defendants' violations were "willful" and "knowing and intentional." Lab. Code §§ 203, 226(e)(1) & (e)(3); *see also Willner v. Manpower Inc* 35 F.Supp.3d 1116, 1131. (N.D. Cal. 2014); *Amaral v. Cintas Corp. No.2* (2008) 163 Cal.App.4th 1157, 1203-04 (holding that the employer did not willfully fail to pay wages under Labor Code § 203 even though the class prevailed on the merits on the underlying claim for failing to pay living wages). Additionally, it is currently unclear whether waiting time and wage statement penalties can be recovered based on a failure to pay premium wages for meal and rest period violations. *See Stewart v. San Luis Ambulance,* Cal. Supreme Court Case No. S246255 (one issue to be decided is whether: "…violations of meal period regulations, which require payment of a "premium wage" for each improper meal period, give rise to claims under sections 203 and 22[6] of the California Labor Code where the employer does not include the premium wage in the employee's pay or pay statements during the course of the violations?"); *see also Maldonado v. Epsilon Plastics, Inc*., 22 Cal. App. 5th 1308, 1335 (2018) (holding that employees are not entitled to penalties for inaccurate wage statements where statements accurately reflect the pay received).

The Settlement "guarantees a recovery that is not only substantial, but also certain and immediate, eliminating the risk that class members would be left without any recovery . . . at all." *See Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, *8 (N.D. Cal. Mar. 5, 2010). Thus, this factor weighs in favor of final approval.

### 2. The Risk, Expense, Complexity, and Duration of Further Litigation

Another factor in assessing the fairness of a settlement is the complexity, expense, and likely duration of the lawsuit had settlement not been achieved. *Officers for Justice*, 688 F.2d at 625. Where, as here, the parties reach a settlement before trial preparation, this factor generally favors settlement. *See Young v. Polo Retail, LLC*, 2007 WL 951821, *3 (N.D. Cal. Mar. 28, 2007).

Defendants have vigorously litigated the case and expressed every intention of continuing their spirited defense through trial and appeal. Matern Decl. ¶¶ 24-30. Class Counsel has extensive experience in wage and hour class action litigation and knows from experience that any case involving wage and hour claims against a major corporate employer can, and often does, lead to costly litigation that goes on for years. Matern Decl. ¶¶ 31. Absent settlement, the next steps in the case would include a defense motion for summary judgment and possibly a motion for decertification, expert discovery, trial preparation, and trial. *Id.* Considerably more risk, effort, and expense would be entailed in taking these steps.

Even if Plaintiff prevailed through summary judgment and trial, Defendants would almost certainly appeal, threatening a reversal of any favorable outcome and causing significant delays in obtaining any relief for Class Members. *See In re Portal Software Secs. Litig.*, 2007 WL 4171201, *3 (N.D. Cal. Nov. 26, 2007) ("Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement."). Accordingly, this factor also supports final approval of the settlement.

### 3. The Risk of Maintaining Class Action Status through Trial

If litigation were to proceed, Plaintiff also would face the risk that the Court would decertify this case as a class action. Plaintiff asserted that, due to the nature of Room Attendant

Class Members' work and Defendants' practices, Room Attendant Class Members were consistently denied the ability to take compliant rest breaks and were required to work off-the-clock. Matern Decl. ¶ 28. Defendants, on the other hand, argued that they made rest periods available and prohibited off-the-clock work, and that to the extent Room Attendant Class Members failed to take their breaks or worked off-the-clock, they did so as the result of individual issues. *Id*. Defendants contend that individual issues would pose challenges to certification of the rest break and off-the-clock claims, including (1) whether Room Attendant Class Members could drop assigned room and (2) whether Room Attendant Class Members skipped their rest breaks or worked off-the-clock as a result. Dkt. 54, p. 9-12.

Plaintiff also alleged class claims for failure to pay overtime and minimum wages as a result of Defendants' rounding policy. Defendants contend that individualized issues would pose challenges to certification of these claims as well, such as (1) whether each employee benefitted as a result of the rounding policy and (2) whether employees engaged in work activities while clocked-in. Dkt. 54, p. 24. Defendants contended that these circumstances would raise highly individualized questions of fact. *Id.*

While Class Counsel disagreed with Defendants' arguments and factual contentions, Class Counsel recognized the potential risk of decertification. Given the risks in maintaining class certification, this factor also favors settlement.

### 4. The Amount Offered in Settlement

"It is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. Rather, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Id*. at 624 (citations omitted). That a proposed settlement may only amount to a "fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is...inadequate and should be disapproved.'" *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998).

If the Court approves the proposed settlement allocations, the Net Settlement Amount will

MATERN LAW GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN BEACH, CA
90266

12

PLAINTIFF'S MOTION FOR FINAL APPROVAL
CASE NO. 16-CV-06772-WHA

be $381,409.83. Dancy Decl. ¶ 15. The entire Net Settlement Amount will be distributed to the Participating Class Members, with no amount reverting to Defendants. Stipulation ¶ 47.a. The average Individual Settlement Award for Room Attendant Class Members is approximately $2,138.99 and the highest Individual Settlement Award to a Room Attendant Class Member is approximately $2,474.56. Dancy Decl. ¶ 17. The average Individual Settlement Award for Non-Room Attendant Class Members is approximately $808.42 and the highest Individual Settlement Award to a Non-Room Attendant Class Member is approximately $1,191.66. Dancy Decl. ¶ 18. This represents a significant recovery based on the risks of maintaining class certification and establishing liability and damages at trial on the claims set forth in the complaint. Accordingly, this factor also favors final approval of the Settlement.

### 5. Extent of Discovery Completed and the Stage of the Proceedings

Final approval is favored because substantial investigation and discovery were completed prior to reaching a settlement. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.'" *Id*. The greater the amount of discovery that has been completed, the more the parties have "a clear view of the strengths and weaknesses of their cases.'" *Young*, 2007 WL 951821, at *4.

Plaintiff conducted extensive investigation and discovery prior to the settlement conference. Prior to filing the complaint, Class Counsel conducted an investigation into the claims alleged, including interviewing Plaintiff and other hotel employees, reviewing documents provided by Plaintiff and other publicly-available documents, and conducting legal research regarding the claims and potential defenses. Matern Decl. ¶ 7. After the complaint was filed, Class Counsel served and responded to extensive written discovery, participated in numerous conferences with Defendants' counsel regarding the scope of discovery and other discovery issues, conducted a detailed evaluation of time records and payroll data provided by Defendants, which involved working closely with a highly-respected statistical expert regarding a statistical analysis of the time records, interviewed Class Members and obtained numerous declarations. Matern Decl. ¶¶ 8-11. Class Counsel also took the depositions of Defendants' 30(b)(6) witness,

two former corporate employees, one supervisor, 15 Class Members, and Defendants' expert and defended the depositions of Plaintiff, five Class Members, and Plaintiff's expert. Matern Decl. ¶¶ 12-13. Plaintiff and Class Counsel therefore had adequate information before them to gauge the value of the Class Members' claims and to assess the fairness of the proposed Settlement.

Because both sides were well-informed regarding the strengths and weaknesses of their respective positions at the time the Settlement was reached, this factor weighs in favor of final settlement approval.

### 6. The Experience and Views of Class Counsel

The sixth factor considers class counsel's experience and views about the adequacy of the settlement. Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Class Counsel is qualified and experienced in handling complex wage and hour class actions and has litigated scores of class action lawsuits involving wage and hour issues in both state and federal courts. Matern Decl. ¶¶ 33-40. Through its investigation, review of discovery materials, litigation, and the settlement conference, Class Counsel has an intimate understanding of the instant litigation and believes the Settlement is fair, adequate, and reasonable. *Id.* at ¶¶ 32, 41. Therefore, this factor also favors final approval of the Settlement.

### 7. The Presence of a Governmental Participant

This factor does not apply because no governmental entities have participated in this case. *See Aarons v. BMW of North America, LLC,* 2014 WL 4090564, *13 (C.D. Cal, 2014).

///

### 8. Class Members' Reaction to the Proposed Settlement

In evaluating the fairness, adequacy, and reasonableness of the settlement, courts also consider the reaction of the class to the settlement. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement

are favorable to the class members." *Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528- 29 (C.D. Cal. 2004).

This factor also favors final approval. To date, no Class Members have objected to the Settlement. Matern Decl. ¶ 18. Additionally, no Class Members have requested exclusion. Dancy Decl. ¶ 11. Thus, given the overall positive reaction by Class Members to the Settlement, final approval is appropriate.

### 9. Fair and Honest Negotiations

Finally, evidence that a settlement agreement is the result of genuine arm's length bargaining with a private mediator after factual discovery also supports a conclusion that the settlement is fair. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). Here, the Settlement was reached after extensive, arm's length settlement negotiations, with the assistance of a Magistrate Judge.

The Parties participated in a settlement conference with Judge Ryu on May 31, 2018. Dkt. 115. At the conclusion of the settlement conference, Judge Ryu made a mediator's proposal which set forth the material terms of a proposed class action settlement. *Id*. On June 4, 2018, the Parties accepted the mediator's proposal, to be set out in a comprehensive written settlement agreement and subject to the approval of the Court. Dkt. 116. These circumstances are the antithesis of collusion and show that the settlement negotiations were at arm's length and, although conducted in a professional manner, were adversarial. Matern Decl. ¶ 16. The Parties went into the settlement conference willing to explore the potential for a settlement of the dispute, but each side was committed and prepared to litigate its position through trial and appeal if a settlement had not been reached. *Id.* Accordingly, this factor also supports a finding that the Settlement is fair, adequate, and reasonable.

### V.   CONCLUSION

Based on the foregoing argument and authority, Plaintiff respectfully requests that this Court grant final approval of the Settlement.

1

2  Dated:  January 4, 2019				**MATERN LAW GROUP, PC**

3

4					By:  _____
						MATTHEW J. MATERN
5						LAUNA ADOLPH
						KAYVON SABOURIAN
6						Attorneys for Plaintiff
						DINA RAE RICHARDSON, individually and on
7						behalf of all others similarly situated

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATERN LAW GROUP, PC
1230 ROSECRANS
AVENUE, STE 200
MANHATTAN BEACH, CA
90266

16   PLAINTIFF'S MOTION FOR FINAL APPROVAL
     CASE NO. 16-CV-06772-WHA