IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINA RAE RICHARDSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INTERSTATE HOTELS & RESORTS, INC., a Delaware corporation; INTERSTATE MANAGEMENT COMPANY, LLC, a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | No. C 16-06772 WHA<br><br>**ORDER RE MOTIONS FOR FINAL APPROVAL OF CLASS SETTLEMENT AND ATTORNEY'S FEES** |

## INTRODUCTION

In this wage and hour class action, plaintiff moves for final approval of a proposed settlement agreement and for attorney's fees and expenses. Defendants do not oppose. For the reasons stated below, the motion for final approval of class settlement is **GRANTED**. The motion for attorney's fees and expenses is **GRANTED IN PART**.

## STATEMENT

The background of this action is set forth in prior orders (*see, e.g.*, Dkt. No. 106). In short, this class action brought by plaintiff Dina Rae Richardson against defendants Interstate Hotels & Resorts, Inc. and Interstate Management Company, LLC, asserted claims for relief that defendants did not authorize and permit employee meal and rest periods, did not pay minimum and overtime wages, did not provide accurate itemized wage statements, and did not pay all wages due upon separation. These claims were alleged based on theories that

defendants maintained policies and practices that pressured employees to work off the clock and through rest periods and meal periods without compensation, and that defendants under-compensated employees by rounding employee time punches to the quarter hour.

On March 12, 2018, the Court certified the following classes (Dkt. No. 106):

> <u>Rest Period Class</u>:  All persons employed by Interstate as room attendants at the Sheraton Fisherman's Wharf in San Francisco, California, at any time from September 23, 2012, through November 29, 2016, who worked at least one shift over 3.5 hours.
>
> <u>Off-the-Clock Class</u>:  All persons employed by Interstate as room attendants at the Sheraton Fisherman's Wharf in San Francisco, California, at any time from September 23, 2012, through November 29, 2016, who worked while clocked out.
>
> <u>Rounding Class</u>:  All persons employed by Interstate as non-exempt employees at the Sheraton Fisherman's Wharf in San Francisco, California, at any time from September 23, 2012, through November 29, 2016, who had their time punches rounded.

Plaintiff has now filed an unopposed motion for approval of a proposed class settlement (Dkt. No. 130). An August 2018 order granted plaintiff's motion for preliminary approval of a proposed class settlement. That order also advised that both the requested attorney's fees and incentive award were subject to reduction at the final approval stage. A September 2018 order approved, as to form and content, a notice concerning the class settlement agreement and final approval hearing. The settlement administrator mailed the proposed class settlement notice and final approval hearing to 350 class members — five returned as undeliverable. After another address was located for those five notices, they were re-mailed — none returned as undeliverable. No class members have opted out or objected to either the settlement or requested fees.

Plaintiff now moves for final approval of the proposed settlement of $800,000 and for attorney's fees. The plan of distribution for the settlement is that, of the net settlement amount, 41.5% will be allocated to Room Attendant Class Members and 58.5% will be allocated to Non-Room Attendant Class Members. In the latter motion, class counsel seek $127,666.44 in unreimbursed expenses, $266,666.67 in attorney's fees (comprising 33 percent of the gross

1  settlement fund), and an incentive award for the lead plaintiff in the amount of up to $5,000.
2  Defendants do not oppose. Class members would receive their payment through a check in the
3  mail within 14 days after defendants provide a settlement administrator with the maximum
4  settlement amount.

5  If the check remains uncashed after 180 days from issuance, the class action settlement
6  provides that the settlement administrator would pay over the amount represented by the check
7  to the California Department of Industrial Relations Unclaimed Wages Fund (with the identity
8  of the class members to whom the funds belong). In January 2019, however, the settlement
9  administrator advised counsel that the California Department no longer accepts unclaimed
10 wages or funds from a third-party administrator. Counsel for the parties agreed that the funds
11 from the uncashed checks will instead be sent to the State Controller's Office Unclaimed
12 Property Fund. In February 2019, class counsel filed a declaration which requested the Court
13 authorize the value of the uncashed checks to be deposited with the State Controller's Office
14 (Dkt. No. 133). This order follows full briefing and oral argument (Dkt. Nos. 128, 130, 132).

**ANALYSIS**

**1.   FINAL APPROVAL OF PROPOSED CLASS SETTLEMENT.**

Under FRCP 23(e), court approval is required for any settlement agreement that will bind absent class members. When a proposed settlement agreement is presented, the district court must perform two tasks: (1) direct notice in a reasonable manner to all class members who would be bound by the proposal, and (2) approve the settlement only after a hearing and on finding that the terms of the agreement are fair, reasonable, and adequate. FRCP 23(e)(1)–(2).

**A.   Adequacy of Notice.**

The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). It must also describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980). The undersigned judge previously

1  approved the form, content, and planned distribution of the class notice (Dkt. No. 127). As

2  described above, the settlement administrator fulfilled the notice plan. This order accordingly

3  finds that notice to class members was adequate.

### B. Fairness, Reasonableness, and Adequacy of Proposed Settlement.

A district court may approve a proposed class settlement only upon finding that it is fair, reasonable, and adequate, taking into account (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. FRCP 23(e); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). Two of the factors are inapplicable here because the class has been and remains certified and there is no governmental participant in this case. For the following reasons and for the reasons stated in the September 2018 order (Dkt. No. 127), this order finds that the proposed class settlement is fair, reasonable, and adequate under FRCP 23(e).

*First*, plaintiff admits that she faced a number of risks in all three classes. Primarily, given the lack of records for rest breaks and off-the-clock work, establishing damages would be difficult. Although plaintiff maintains that both liability and the amounts of premium wages due for missed rest periods could be determined using representative sampling, any proposed methodology would be vulnerable in ways that could limit recovery. Any recovery would thus likely require the analysis of granular data points, resulting in an expensive, time-consuming, and arduous process. Defendants further contend that the actual denied rest breaks were sporadic and that any off-the-clock work was minimal. Although under the Collective Bargaining Agreement room attendants typically were assigned 14 rooms, room attendants could drop rooms. Defendants contend that no evidence exists that management knew that room attendants were working off-the-clock. The rounding class would be subject to similar legal attacks even though the unpaid compensation would be relatively small (plaintiff's expert determined that on average employees were not compensated for 0.79 minutes per shift). If

4

relief were to be denied on any of these claims, plaintiff would recover no penalties under Labor Code section 226 and 203 (Dkt. No. 130-1 at ¶¶ 25, 26). Against these genuine risks, the $800,000 gross settlement fund offers an immediate and certain award for the class.

Moreover, the parties reached class settlement after approximately two years of litigation, which included substantial motion practice, class certification, and extensive discovery. At the time of settlement, plaintiff achieved class certification of the aforementioned classes, served and responded to extensive written discovery, participated in numerous conferences with defendants' counsel as to discovery issues, conducted a detailed evaluation of time records and payroll data provided by defendants, interviewed class members, and obtained numerous declarations. Plaintiff's counsel defended the depositions of plaintiff, five class members, and plaintiff's expert and took the depositions of defendants' 30(b)(6) witness, two former corporate employees, one supervisor, 15 class members, and defendants' expert. In addition, the parties participated in extensive, arm's length settlement negotiations, including a settlement conference with Judge Donna Ryu. The parties accepted Judge Ryu's proposal, which indicates the lack of collusion in arriving at the settlement. The stage of litigation and the extent of discovery conducted indicate that plaintiff had enough information and familiarity with the case to make an informed decision. They also demonstrate that the risk, expense, and complexity of further litigation were not insubstantial.

*Second*, the settlement terms are fair, reasonable, and adequate. As stated, the settlement amount of $800,000 offers substantial benefits when balanced with the strength of plaintiff's case. The settlement represents 71.93% of the amount of unpaid wages exclusive of interest and penalties ($1,112,194.11). Including interest and penalties, the maximum potential recovery for the certified claims is $4,158,169.83 — but, as class counsel stated at oral argument, these penalties depend on a showing of willfulness, exceedingly difficult to prove here. Furthermore, the release is limited to the specific facts at issue, class counsel are experienced in wage and hour class action litigation, and no class member has objected to the settlement or requested exclusion (*id.* at ¶¶ 11, 18, 19).

5

*Third*, the plan of allocation of settlement proceeds is also fair and reasonable. To start, the net settlement will be distributed so that after expenses, attorney's fees, class award and the employer's tax are paid out of the $800,000 settlement fund, 41.5% of the remaining funds will be allocated to two classes (the Room Attendant Class Members) and 58.5% will be allocated to the third class (the Non-Room Attendant Class Members). More specifically, as calculated before any adjustments to the expenses and attorney's fees, the net settlement amount to the class will be $381,409.83. The net proceeds will be apportioned to each participating class member with no amount reverting to defendants. This will result in an average settlement award of approximately $2,138.99 for Room Attendant Class Members (the highest individual award being approximately $2,474.56) and an average settlement award of approximately $808.42 for Non-Room Attendant Class Members (the highest individual award being approximately $1,191.66). These averages provide a baseline for recovery per the attorney's fees calculus below. Thus, based on the risks of establishing liability and damages at trial — and the risks of maintaining class certification — this plan of allocation presents a minimally fair recovery to class members.

In short, having considered the applicable factors, this order finds the proposed class settlement is fair, reasonable, and adequate so as to warrant final approval. Accordingly, final approval of the proposed class settlement and plan of allocation is **GRANTED**.

**2.    MOTION FOR ATTORNEY'S FEES, EXPENSES, AND INCENTIVE AWARD.**

**A.    Expenses.**

Class counsel seek to recover from the settlement fund $127,666.44 in litigation expenses. The largest component of these expenses are expert services in statistical consulting ($43,675.00). The second largest component are the court reporter fees for deposition transcripts ($34,535.04). Counsel also seek reimbursement for airfare ($11,646.38), deposition summaries ($9,350.00), interpreter expenses ($6,668.30), hotel accommodations ($5,160.11), class action notices ($3,982.37), cost of transportation ($2,934.94), meals ($1,939.67), and, among other things, filing fees ($1,450.00) and expert witness fees ($233.02) (Dkt. No. 132-1).

6

Not all these expenses are reasonable. More specifically, almost all of the airfare expenses are too exorbitant to be reasonable. The vast majority of the flights detailed were from Los Angeles to San Francisco — flights generally priced at under $300 round-trip. But the entry for the October 4, 2017 flight from LAX to SFO, for example, is laughably expensed at $1,319.06. In addition, the 'airfare' section is replete with a general level of non-description. Many of the flights listed, in addition to their unreasonable value, do not adequately specify the arriving location — so it is impossible to tell if the pricing is reasonable. The "airfare for Kayvon 10/25/17," for example, is priced at $1,479.33.

As such, within the airfare section, only the following expenses are sufficiently reasonable to be reimbursed by the class: $173.20 (Matthew Matern 9/28/17 one-way airfare from LAX to SFO), $111.00 (LAX Parking), $173.20 (Kayvon Sabourian one-way airfare from SFO to LAX), $8.00 (inflight WiFi), $58.98 (Launa Adolph one-way flight from LAX to SFO 11/29/17), $133.98 (Launa Adolph one-way flight from LAX to SFO 12/4/17), $173.98 (Launa Adolph one-way flight from OAK to LAX 12/5/17), $116.40 (Kayvon Sabourian United Airlines San Francisco/LAX 11/6/17), $203.34 (Kayvon Sabourian round-trip LAX to SFO 11/1/17), $298.20 (Kayvon Sabourian round-trip LAX 10/4/17 and 10/8/17), $50.00 (baggage fee), $445.40 (Kayvon Sabourian round-trip LAX to Austin 10/30/17). In total, this equates to $1,945.68 in reimbursable airfare expenses (reduced from $11,646.38).

In addition, in "Hotel Accommodations," one entry "Airfare for Kayvon 10/12/17 " is expensed at $853.18. This entry is both too vague and too high to be reasonable. It is struck. Four transportation entries by Kayvon Sabourian are also too high and too vague to be reasonable. More specifically, transportation "to and from airport" from 10/4/17 to 10/7/17 is expensed at $446.37. Similarly, vague entries for transportation from 11/7/17 to 11/10/17 ($390.62), 10/12/17 ($210.63), and 10/25/17 to 10/27/17 ($203.72) are all too high and too vague to be reasonable.

Nevertheless, all other expenses were a reasonable and necessary part of the litigation and are of the type customarily billed to a fee-paying client. No class member objected to

7

recovery of these costs. As such, the motion for reimbursement of these costs is **GRANTED IN PART**. The $127,666.44 in requested expenses are reduced to $115,861.22.

### B. Incentive Award.

Plaintiff requests $5,000 as an incentive award. As stated, defendants do not oppose this request. Plaintiff provides a declaration, under oath, stating that she worked closely with class counsel throughout the litigation, providing about 60 hours of work. Such work included providing relevant documents to class counsel, reviewing and discussing documents including defendants' written discovery requests, preparing for a deposition, being deposed, attending the settlement conference with Judge Ryu, and discussing the case with other class members (Dkt. No. 128-2 at ¶ 4).

As cautioned in the undersigned's "Notice Regarding Factors to be Evaluated for Any Proposed Class Settlement," "[a] request for an incentive payment is a red flag." Incentive awards pose the risk that a class representative has gone along with a settlement, not because it secures a good outcome for the class, but simply for the incentive award. Such awards should therefore be subject to careful scrutiny. In light of the foregoing, plaintiff's request for an incentive award is **GRANTED IN PART**. An award of $2,000 is reasonable and will be granted here.

### C. Attorney's Fees.

A district court must ensure that attorney's fees are "fair, adequate, and reasonable," even if the parties have entered into a settlement agreement that provides for those fees. *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003). "In 'common-fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." Counsel argue that the lodestar method should be applied in the instant motion (the purported lodestar is $690,600), but assert that even under a percentage basis calculation the requested fees are reasonable. Our court of appeals has recognized 25 percent of the common fund as a benchmark award for attorney's fees. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). California law authorizes the percentage method for awarding attorney's fees in common fund cases. See *Laffitte v.*

1  *Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (Cal. 2016).  The undersigned judge finds application
2  of the percentage method to be appropriate under the circumstances.

3  As stated, class counsel seek $266,666.67 — or 33 percent of the gross settlement fund
4  (but 39% of the *net* settlement fund). The requested 39 percent of the net settlement fund is
5  above the 25 percent benchmark set forth by our court of appeals.

6  Even if this order were to adopt a lodestar method, this order would exclude the
7  following entries from class counsel's total hours calculation and lodestar because the
8  reasonableness of each entry is inadequately supported by its description (Dkt. Nos. 122-2):

- $22,755 in erroneous duplicative entries in the project for ex parte application to continue class certification motion briefing.
- $68,605 in billed time for "travel" throughout all projects, such as for depositions.
- $77,325 in billed time for "travel" that also clustered other time, but the entry does not separate how much time is allocated to "travel" or to other activities.
- $22,665 in the motion for attorney's fees, costs, and class representative.
- $6,360 in one associate's time (Kayvon Sabourian — 10.60 hours) solely researching the undersigned judge's orders as to class list production and discovery.
- $1,380 solely in researching whether payment of expert witness deposition time is a taxable cost.
- $840 billed for "work on opening files sent by Drogin."

22  These unreasonable and/or inadequately supported entries amount to $199,930 in fees.
23  Excluding these entries reduces class counsel's purported lodestar of $690,600 to $490,670.

24  It is true that counsel conducted substantial motion practice and extensive discovery.
25  Further, counsel also worked on a contingent-fee basis despite the risks of litigation, which
26  were substantial in this case — and for approximately two years.  All of these factors strongly
27  weigh in favor of a strong attorney's fees payment.

9

Still, in light of the $115,861.22 in expenses and the $2,000 incentive award, the $800,000 recovery is reduced to a net settlement fund of $682,138.78. As such, the $266,666.67 requested fee, representing 39% of that amount (and these calculations do not factor the estimated employer's tax amount, calculated to come out of the fund at $19,257.06 — (Dkt. 130-3 at 4)), is too high an award. Such a fee would significantly reduce the net recovery to class members. A resulting award of $200,000 (representing 29% of the *net* settlement fund and 25% of the *gross* settlement fund ) — is fair and reasonable.

Accordingly, class counsel's motion for attorney's fees is **GRANTED IN PART**. This order awards **$200,000** in attorney's fees. Half of this amount shall be paid immediately. The other half shall be paid when class counsel certify that all funds have been properly distributed and the file can be completely closed.

## CONCLUSION

Accordingly, it is hereby ordered as follows:

1. The notice of settlement, as well as the manner in which it was sent to class members, fairly and adequately described the proposed class settlement, the manner in which class members could object to or participate in the settlement, and the manner in which class members could opt out of the class; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to class members; and complied fully with the Federal Rules of Civil Procedure, due process, and all other applicable laws. A full and fair opportunity has been afforded to class members to participate in the proceedings convened to determine whether the proposed class settlement should be given final approval. Accordingly, this order hereby determines that all class members (since none excluded themselves from the settlement by filing a timely request for exclusion) are bound by this settlement order.

2. This order also finds that the proposed class settlement is fair, reasonable, and adequate as to the class, plaintiff, and defendants; that it is the product of good faith, arms-length negotiations between the parties; and that the settlement is consistent with public policy and fully complies with all applicable provisions of law. The settlement is therefore approved. As set forth in the settlement agreement, within 14 business days, the settlement

administrator shall mail a check to each class members' last known address. Funds from uncashed checks may be sent to the State's Controller's Office Unclaimed Property Fund.

3. Having considered class counsel's motion for attorney's fees, reimbursement of expenses, and an incentive award, this order hereby awards class counsel attorney's fees of $200,000. Half of this amount shall be paid immediately. The other half shall be paid when class counsel certify that all funds have been properly distributed and the file can be completely closed. It is possible that the fee award may have to be adjusted downward to account for glitches in the distribution process that sometimes arises. Counsel shall please continue their work to ensure distribution goes smoothly.

4. Class counsel shall also receive $115,861.22 as reimbursement for their litigation expenses, to be paid from the settlement fund. Half of this amount shall be paid immediately. The other half shall be paid when class counsel certify that all funds have been properly distributed and the file can be completely closed.

5. Lead plaintiff, Dina Rae Richardson, shall also receive $2,000 as an award for the numerous hours and efforts invested in this action.

**IT IS SO ORDERED.**

Dated: February 21, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE